(33 Misc. Rep. 236.)

### HEALEY v. MARTIN et al.

(Supreme Court, Special Term, Kings County. December, 1900.)

1. AGENCY—VIOLATION OF TRUST—PURCHASE OF PROPERTY—REMEDIES.

R.'s broker offered property of R. to M. for $300,000, and about that time B., who did not know R. or his broker, informed plaintiff the property in question could be bought for $350,000, and falsely represented that he was dealing with R. A contract to sell for $250,000 was effected by M., and about that time plaintiff authorized B. to purchase the property for $250,000 and seven parcels of land; B. representing that such consideration was required. B. had undertaken to secure a loan with which the payment to R. might be made, and, unknown to plaintiff, M. assisted in procuring the loan. B. acted for M. when the title was conveyed from R., and, on his delivering the deed to plaintiff, plaintiff gave his deed to one who was represented as R.'s secretary, but who was in fact a "dummy" of M. Thereafter plaintiff discovered that R. had not received the seven parcels of land, but that M. had sold a portion of them, and that B. was collecting the rents of the rest. Held, that the evidence was sufficient to show that M. knew that B. was practicing a fraud on his principal, and hence plaintiff was entitled to recover the land.

2. SAME—RESCISSION.

Where an agent falsely represented to his principal that, in order to purchase certain property, $250,000 and some parcels of the principal's land would be necessary, and another in collusion with the agent purchased the land for $250,000, and it was conveyed to the principal, who

gave the consideration named by his agent, it was not necessary, in a suit by the principal to recover the land given as part consideration, that he should offer to restore what he had received before he could demand restoration.

Action by James B. Healey against C. Grayson Martin and others. Judgment for plaintiff.

Henry Daily, Jr., and Benjamin F. Tracy, for plaintiff.
M. A. Vosburgh and E. J. Meyers, for defendant Barnaby.
G. S. Hubbard and W. N. Dykman, for defendants Martin.

MATTICE, J. In the early days of January, 1899, the plaintiff made the defendant Barnaby his agent for the purpose of buying certain real estate situated on Fifth avenue and Nineteenth street, in the city of New York. Barnaby had informed the plaintiff that one William G. Reed was the owner of this property, and that he had personally seen Mr. Reed, who wanted $350,000, but would take in payment therefor $250,000 in cash and deeds of seven parcels of land belonging to the plaintiff, situated in the boroughs of Brooklyn and New York, which are described in the complaint in this action. As a matter of fact, Barnaby had not personally seen or had any conversation or communication with Mr. Reed. The plaintiff personally examined the premises which he desired to purchase, and then, as before stated, instructed Barnaby to make the negotiations. About the same time, and on the 9th day of January, 1899, the defendants Martin purchased the Fifth avenue property of Mr. Reed, through his brokers, for the sum of $250,000. The contract of purchase and sale was put in writing in the name of John G. Schawe, as dummy for the Martins. At the time of the execution of the contract the Martins paid to the owner, Mr. Reed, or his brokers, the sum of $10,000. The contract provided that the balance of the purchase price should be paid on the 10th day of March, 1899, at which time the deed should be delivered. Before that time arrived, and on the 25th day of January, the plaintiff made and executed proper deeds of his said seven parcels of land, in which the defendant James W. Golden was named as grantee, and delivered the same to his agent, Barnaby; Barnaby having told the plaintiff that Golden was the private secretary of Mr. Reed, and that it was Mr. Reed's desire that the title should be taken in Golden's name. Barnaby thereupon delivered to the plaintiff the deed of the Fifth avenue property, executed by Mr. Reed. The plaintiff then executed two mortgages on the Fifth avenue property; one for $200,000 to the Lawyers' Mortgage Insurance Company, and one for $50,000 to the wife of defendant Barnaby. Barnaby had told the plaintiff, before the titles were passed, that he would procure the necessary loan of $250,000. It appears that the defendant Golden was not the private secretary of Mr. Reed, but was the representative—or dummy, so called—of the defendants Martin. Reed did not know Golden, nor the plaintiff, nor Barnaby. In fact, he knew nothing whatever about the transactions with the plaintiff. All Reed knew about it was that he had sold his Fifth avenue property, by contract of January 9th, for $250,000, had received $10,000 cash pay-

ment, and about January 25th received the balance, and executed the deed which named the plaintiff as grantee. After the titles were passed on the 25th day of January, plaintiff went into possession of the Fifth avenue property, and collected the rents, through his agent, defendant Barnaby. Barnaby retained a certain amount of the rents in payment, or part payment, for his commissions in making the sale or transfer, and continued to so collect until August of the same year, when plaintiff discovered that Mr. Reed did not receive the seven parcels of land which he (plaintiff) had supposed was a part of the purchase price. Plaintiff then discharged Barnaby as his agent, and brought this action to recover back the seven parcels of land, upon the theory that defendant Barnaby and the defendants Martin had conspired to defraud him by inducing him to believe that his said seven parcels of land were needed, used, and transferred to Mr. Reed in part payment for the Fifth avenue property, when, in truth and in fact, it was not so needed, used, or transferred; in other words, that these defendants had practically robbed him of the seven parcels of land.

None of the defendants gave evidence upon the trial except Golden. He testified that he was the mere dummy of the defendants Martin, permitted his name to be used as grantee for their benefit at their request, and that he had no interest whatever in the result of the action. It appears from the evidence that the Fifth avenue property, which plaintiff received, was fairly worth between $285,000 and $300,000, and that plaintiff's equity in the seven parcels of land, over and above certain incumbrances, was about $53,000. A short time before the transaction in question, plaintiff entered into an executory contract with defendants Martin to exchange the seven parcels of land for what was termed the "reservoir" property. This contract was to have been performed January 15, 1899, but before January 1st the Martins declined to perform, or had put it out of their power to perform by selling the "reservoir" property to another party, alleging as a reason that one of the parcels of plaintiff did not contain the amount of land stipulated in the contract. In any event, it is quite clear that on the 1st of January all the parties knew that the contract would not be performed. The history of the transactions with which this suit is concerned commenced about January 1st. It seems that about January 1st Mr. Reed, the owner of the Fifth avenue property, placed it in the hands of his broker for sale. This broker immediately sought out the defendants Martin, and offered it for sale for $300,000. About the same time, Barnaby, who did not know Reed or his broker, sought the plaintiff, and informed him that he knew of this property, and that it could be bought for $350,000. Barnaby had several interviews with the plaintiff, extending over several days, in which he falsely represented that he was dealing directly with the owner, Mr. Reed, and in which he falsely stated the asking price. Plaintiff inspected the property, and finally authorized Barnaby to make the exchange. During the same time the defendants Martin continued their negotiations with Reed's broker, endeavoring to secure the property for $250,000. About the 9th of January, Reed's broker agreed to sell for $250,000,

and accordingly the contract of January 9th was made. This contract was made just about the time Barnaby had succeeded in getting the plaintiff to authorize him to buy the property for $250,000 in cash and his seven parcels of land, the equity in which was fixed at $100,000. Barnaby told plaintiff he would procure the loan of $250,000 for him. Unknown to the plaintiff, the Martins assisted in procuring the loan for him, and applied for an examination of the title for him, as appears by the testimony of the president of the Lawyers' Title Company and Lawyers' Mortgage Company. Plaintiff never had any conversation with the Martins, and Barnaby never had any conversation with Reed or his broker; therefore it is clear that all the knowledge the Martins possessed as to the plaintiff's willingness to become a purchaser, and the amount he would give, and that he desired a loan, was imparted to them by Barnaby. All the knowledge Barnaby possessed as to the willingness of Reed to sell, and what it could be obtained for, came from the Martins. The Martins were not present at the passing of title. It seems that Barnaby acted for the Martins at that time, produced the deed executed by Reed and delivered it to the plaintiff, took the deeds executed by the plaintiff with Golden named as grantee. A representative of the mortgage company was present to take the mortgage and deliver the check for $200,000, which plaintiff indorsed, and gave to Barnaby. Whether Barnaby ever actually delivered the deed of the Brooklyn parcels to Golden or the Martins does not appear, except that the deed was recorded the 26th of January, and was produced on the trial by counsel for the defendants. The Martins went into possession of the parcel known as the "Park Avenue Property," collected the rents, and finally sold it. Barnaby commenced at once to collect the rent of the six Brooklyn parcels, and has continued to do so ever since. No attempt was made by the defendants to explain why Barnaby collects the rents of the Brooklyn parcels, and it is, therefore, safe to assume that it cannot be explained except upon the theory that he does so as the equitable owner, the legal title being in Golden. This leads to the conclusion that Barnaby and the Martins divided the plaintiff's property; Barnaby taking the Brooklyn parcels, and the Martins taking the New York or Park avenue parcel. If Barnaby had not been the plaintiff's agent, then it might be claimed that the Martins and Barnaby had the right to make all they could, so long as the plaintiff got all he bought, and paid no more than he agreed to, and was not in fact damaged, and that plaintiff would have no remedy except the one based upon the doctrine of rescission. No such rule applies in this case. Barnaby was plaintiff's trusted agent, to negotiate for plaintiff's benefit, and not his own; and the Martins must have known of the existence of that relation. Barnaby acted for plaintiff in the former negotiations in reference to the "reservoir" property at the time Schawe signed for the Martins. Schawe says he was their dummy in that contract, and Barnaby conducted those negotiations for plaintiff. Those negotiations ended about the time these began, and related to the same seven parcels of land. If the Martins did not know that Barnaby was plaintiff's agent, but supposed he was

their agent in this transaction, it was their duty to explain upon the trial. I think the evidence justifies and requires the conclusion that the Martins knew that Barnaby was plaintiff's agent, and that he was engaged in an attempt to defraud the plaintiff out of his equities in the seven parcels by false representations. The Martins evidently did not close their negotiations with Reed and enter into the contract of January 9th until Barnaby had informed them what plaintiff had concluded to do.

It is claimed that the Martins had a perfect right to ascertain from the plaintiff's agent, Barnaby, if plaintiff would give the $250,000 and deeds of the seven parcels, before they made the contract to purchase of Reed for $250,000, and thereby make a profit for themselves of the value of the equities in the seven parcels. That would be so if the Martins did not know of Barnaby's fraud, and were acting in good faith, expecting to reap for themselves the benefit of the value of plaintiff's equities in the seven parcels as profit. The circumstances, however, forbid that construction. In the first place, it is safe to assume that Barnaby made the fraudulent representation for the purpose of gain. If the Martins got the equities in all the parcels, Barnaby would not make anything by reason of the fraud. Barnaby collects the rent on six parcels from the very moment of the transaction to the time of the trial. The Martins collect the rent of the other parcel,—the Park avenue property. The Martins knew that plaintiff parted with all of the seven parcels. They paid their dummy—the defendant Golden—to become the grantee of all the parcels. My conclusion is that Barnaby and the Martins arranged that Barnaby should have the six Brooklyn parcels, and the Martins the Park avenue parcel. This division of the property between the defendants Martin and Barnaby, whereby Barnaby, the agent, received the major part of it, characterizes the whole transaction. It may never appear just how much the Martins knew of or participated in Barnaby's fraud; nor is it necessary to inquire. The very fact of this division, whereby Barnaby gets property amounting to over $40,000, convinces me that the Martins knew that the agent was practicing a gigantic fraud upon his principal. They assisted him at the very outset by purchasing the property of Reed January 9th, immediately after Barnaby had obtained the plaintiff's consent to purchase; then assisted in procuring the loans; requested one of the officers of the Lawyers' Title Company to see that the "matter goes through smoothly and nicely"; kept in the background at the passing of titles; permitted Barnaby to act for them, and concealed the identity of Golden. These and other circumstances convince me that the final division of what may properly be termed the "spoils" was the reward the Martins received for their active participation in Barnaby's fraud, or for the assistance they rendered him in his successful effort to defraud the plaintiff. Plaintiff's equities in the Brooklyn parcels were worth as follows: In the parcel described in the second paragraph of the complaint, $12,000; in the parcel described in the third paragraph, $17,000; in the parcels described in the fourth, fifth, sixth, and seventh paragraphs, $14,000,—$43,000. Plaintiff's equity in the Park avenue

property, described in the first paragraph of the complaint, was worth $10,000. Barnaby was the chief actor, and reaped the greater benefit. The Martins assisted him with knowledge of the fraudulent scheme.

The doctrine of rescission, so ably presented and elaborately discussed by counsel for defendants, has no application here. The familiar principle that the person defrauded must offer to restore what he has received before he can demand restoration of that which he has parted with, does not apply in this case. Neither Barnaby nor the Martins parted with anything, so there would be nothing to restore. The contract of purchase between the Martins and Reed, January 9th, was made by the Martins, as we have seen, in furtherance of the scheme to defraud, and not in good faith to obtain title for themselves. It is simply like the case of an agent falsely representing to his principal that he has paid a greater sum for him than he actually has, and pockets the difference. Clearly, the principal can maintain an action to compel restoration or payment. Plaintiff is entitled to judgment for the relief demanded in the complaint, with costs, and an extra allowance of $1,000.

Judgment for plaintiff, with costs.